UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **08 CR 466** |
| | ) | |
| v. | ) | |
| | ) | Violations: Title 18, |
| FREDDIE JOHNSON a/k/a | ) | United States Code, |
| "Shelton Williams," "Ramon," "Terry," and | ) | Sections 513(a), 1028A(a)(1), |
| "Knucklehead," | ) | 1343, and 2 |
| MARILYN RAINEY | ) | |
| WILLIE COLLINS, | ) | **JUDGE DER-YEGHIAYAN** |
| BRANDY AMOS, | ) | |
| ROBIN YANCY, | ) | **MAGISTRATE JUDGE COLE** |
| QIANA BISHOP-OYEDEPO, | ) | |
| OWEN PITTMAN, | ) | |
| JENNIFER RICHARDSON, | ) | |
| LEANDRE BURNETT, | ) | **FILED** |
| LORIE WESTERFIELD, | ) | |
| ERNEST PRESTON, a/k/a "Richard Preston," and | ) | JUN 1 1 2008 |
| KHADIJA MUMIN, a/k/a "Erica Smith" | ) | |

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

COUNT ONE

The SPECIAL MARCH 2007 GRAND JURY charges:

1.    At times material to this indictment:

    (a)    Defendant FREDDIE JOHNSON controlled an Illinois corporate entity named R.M. Developers, LLC.  Defendant JOHNSON maintained a checking account for R.M. Developers, LLC at Community Bank of Lawndale.

    (b)    Defendant ROBIN YANCY was a loan officer for Mortgage Professionals, LLC, a mortgage brokerage company.  Defendant YANCY controlled an Illinois corporate entity named Tyme, LLC.  Defendant YANCY maintained a checking

account for Tyme, LLC at Shore Bank.

(c)     Defendant QIANA BISHOP-OYEDEPO was a loan officer for American Premier Mortgage, LLC, a mortgage brokerage company.

(d)     Defendant OWEN PITTMAN was a loan officer for Express Mortgage and First Capital Mortgage Company, both mortgage brokerage companies.

(e)     Defendant JENNIFER RICHARDSON was a loan officer for First Capital Mortgage Company, a mortgage brokerage company.

(f)     Defendant LEANDRE BURNETT was a loan officer and branch manager at Elite Mortgage, a mortgage brokerage company.

(g)     Defendant LORIE WESTERFIELD was an attorney licensed by the state of Illinois who practiced real estate law, and a lawyer-member of Attorneys' Title Guaranty Fund, Inc., a title insurance company.

(h)     Defendant ERNEST PRESTON maintained a Bank One, N.A. checking account in the name of "Richard Preston."

(i)     The 2934 West Grand Avenue Currency Exchange, Inc. (the "West Grand Avenue Currency Exchange") was a commercial currency exchange offering various financial services to the public, including cashing checks and selling money orders.

(j)     The Roosevelt Austin 24 Hour Currency Exchange, Inc. (the "Austin and Roosevelt Currency Exchange") was a commercial currency exchange offering various financial services to the public, including cashing checks and selling money orders.

2

(k)    The Taylor-Ogden Currency Exchange, Inc. (the "Taylor-Ogden Currency Exchange") was a commercial currency exchange offering various financial services to the public, including cashing checks and selling money orders.

2.    Beginning no later than January 2003 and continuing until in or about November 2005, in the Northern District of Illinois, Eastern Division and elsewhere,

FREDDIE JOHNSON a/k/a
"Shelton Williams," "Ramon," "Terry" and "Knucklehead,"
MARILYN RAINEY,
WILLIE COLLINS,
BRANDY AMOS,
ROBIN YANCY,
QIANA BISHOP-OYEDEPO,
OWEN PITTMAN,
JENNIFER RICHARDSON,
LEANDRE BURNETT,
LORIE WESTERFIELD,
ERNEST PRESTON, a/k/a "Richard Preston," and
KHADIJA MUMIN, a/k/a "Erica Smith"

defendants herein, together with others known and unknown to the Grand Jury, devised, intended to devise, and participated in a scheme to defraud and to obtain money from mortgage lenders, including Guaranteed Financial Mortgages Services, Inc.; Morequity, Inc.; First Franklin Financial Corporation; Chapel Mortgage Corporation; The CIT Group / Consumer Finance, Inc.; David Piccinini, Inc.; Long Beach Mortgage; Peoples Choice Home Loan, Inc.; Long Beach Mortgage Company; BNC Mortgage, Inc.; First Magnus Financial Corp.; First Capital Mortgage; Accredited Home Lenders; and Metrocities Mortgage LLC (collectively, the "Mortgage Lenders"), by means of materially false and fraudulent

3

pretenses, representations, and promises, which scheme is further described below.

3.    It was part of the scheme that from no later than January 2003 until in or about November 2005, defendants and their co-schemers fraudulently obtained more than $3.2 million in mortgage loan proceeds from the Mortgage Lenders by submitting false and fraudulent loan applications for approximately seventeen fraudulent real estate transactions orchestrated by defendant FREDDIE JOHNSON in which individuals using stolen and fraudulent identities appeared at staged real estate closings as the purported buyers, sellers, and representatives of buyers and sellers to obtain the loan proceeds "paid" to the purported sellers and their nominees.

4.    It was further part of the scheme that defendant FREDDIE JOHNSON arranged these fraudulent real estate transactions without actual homeowner's knowledge or consent.

5.    It was further part of the scheme that after these fraudulent real estate transactions closed, defendant FREDDIE JOHNSON and his co-schemers fraudulently obtained the mortgage loan proceeds that were paid to the imposter sellers and their nominees.

6.    It was further part of the scheme that the purported buyers in the fraudulent real estate transactions orchestrated by defendant FREDDIE JOHNSON did not make mortgage payments and defaulted on their mortgage loans.

7.    It was further part of the scheme that defendant FREDDIE JOHNSON

4

recruited and paid individuals, including defendants MARILYN RAINEY, WILLIE COLLINS, BRANDY AMOS, and ERNEST PRESTON to knowingly pose as buyers, sellers and the purported representatives of buyers and sellers in the fraudulent real estate transactions defendant JOHNSON arranged.

8.    It was further part of the scheme that defendant MARILYN RAINEY fraudulently posed at closings for approximately five fraudulent real estate transactions as a buyer, seller, or the purported representative of a buyer or seller, using the stolen and false identities "Mamie Crockett," "Lela Williams," "Martha Kelly," and "Annie Pearl Dawson."

9.    It was further part of the scheme that defendant WILLIE COLLINS fraudulently posed at the closings for approximately five fraudulent real estate transactions as a buyer, seller, or the purported representative of a buyer or seller, using the stolen and false identities "Eddie Robinson," "James Smith" and "Albert Williams."

10.    It was further part of the scheme that defendant BRANDY AMOS fraudulently posed at the closings for approximately six fraudulent real estate transactions as a buyer using the stolen and false identities "Meghan Ross" and "Sinequa Wilcox."

11.    It was further part of the scheme that defendant ERNEST PRESTON fraudulently posed at a closing for a real estate transaction as a buyer using the stolen and false identities of "Richard Grissom."

12.    It was further part of the scheme that defendant FREDDIE JOHNSON fraudulently posed at the closings for approximately three fraudulent real estate transactions

as the purported representative of the seller using the false identity "Shelton Williams."

13.    It was further part of the scheme that defendants FREDDIE JOHNSON, ROBIN YANCY, QIANA BISHOP-OYEDEPO, OWEN PITTMAN, JENNIFER RICHARDSON, and LEANDRE BURNETT knowingly prepared and submitted and caused to be prepared and submitted to Mortgage Lenders, false and fraudulent loan applications and supporting documents in the names and on behalf of purported buyers using stolen and false identities, including false and fraudulent appraisals, and verifications of employment and rent.

14.    It was further part of the scheme that defendants QIANA BISHOP-OYEDEPO, OWEN PITTMAN and JENNIFER RICHARDSON submitted and caused to be submitted to Mortgage Lenders loan applications in connection with the fraudulent real estate transactions arranged by defendant FREDDIE JOHNSON which defendants BISHOP-OYEDEPO, PITTMAN and RICHARDSON knew contained materially false representations and material omissions, including:

a.    Falsely representing that a proposed borrower would occupy property as his or her primary residence, when in truth and in fact, defendants BISHOP-OYEDEPO, PITTMAN and RICHARDSON well knew the proposed borrower did not intend to occupy the property. Defendants made this false representation in order to obtain more favorable financing terms, including 100% financing, from victim Mortgage Lenders; and

b.    Failing to reveal that a proposed borrower was simultaneously seeking

6

or had received financing from other Mortgage Lenders to purchase additional properties. Defendants BISHOP-OYEDEPO, PITTMAN and RICHARDSON omitted this information from the loan applications submitted to the Mortgage Lenders in order to obtain multiple loans for the same individual borrower.

15.    It was further part of the scheme that defendant FREDDIE JOHNSON fraudulently verified employment and rent information contained in the fraudulent loan applications submitted to Mortgage Lenders.

16.    It was further part of the scheme that defendant FREDDIE JOHNSON recruited individuals, including defendants WILLIE COLLINS, MARILYN RAINEY, ERNEST PRESTON, KHADIJA MUMIN, to negotiate checks constituting "sale" proceeds derived from the fraudulent real estate transactions defendant JOHNSON orchestrated.

17.    It was further part of the scheme that, between approximately January 2003 and October 2003, defendant ERNEST PRESTON knowingly used the false identity "Richard Preston" to cash and otherwise negotiate approximately 11 checks payable in amounts totaling over $1,000,000 that he received from defendant FREDDIE JOHNSON, which checks PRESTON knew were derived from fraudulent real estate transactions.

18.    It was further part of the scheme that defendant LORIE WESTERFIELD, acted as a real estate attorney for fraudulent real estate transactions that she knew defendant FREDDIE JOHNSON had arranged and also acted as a title company closer for some of those fraudulent real estate transactions.

7

*The Richard Grissom Transactions*

19.    It was further part of the scheme that in or about January and February of 2003, defendant FREDDIE JOHNSON knowingly submitted and caused to be submitted false and fraudulent loan applications in the name of "Richard Grissom" to Guaranteed Financial Mortgage Services, Inc. and The CIT Group / Consumer Finance, Inc. in order to fraudulently obtain mortgage loans for fraudulent real estate transactions at the closings for the residential properties located at 215 South Central Park and 127 South Central Park in Chicago, Illinois (the "Richard Grissom Transactions").

20.    It was further part of the scheme that defendant ERNEST PRESTON fraudulently posed as "Richard Grissom," the purported buyer, at the closing for 215 South Central Park, which occurred on or about January 6, 2003.

21.    It was further part of the scheme that defendant FREDDIE JOHNSON fraudulently posed as "Shelton Williams," the sellers' purported representative operating with power-of-attorney authority, at the closings for the Richard Grissom Transactions.

22.    It was further part of the scheme that defendant FREDDIE JOHNSON caused checks representing proceeds from the sale of Richard Grissom Transactions to be made payable to "Richard Preston," an alias which defendant JOHNSON knew would be used by defendant ERNEST PRESTON to negotiate the checks.

23.    It was further part of the scheme that defendant ERNEST PRESTON fraudulently negotiated the checks made payable to "Richard Preston" from the sale of 215

South Central Park in the approximate amounts of $78,055 and $44,000 on or about January 7, 2003 at Bank One, N.A., where defendant PRESTON maintained an account in the alias name of "Richard Preston."

24.　It was further part of the scheme that defendant ERNEST PRESTON fraudulently negotiated a check made payable to "Richard Preston" from the sale of 127 South Central Park in the approximate amount of $192,814 on or about February 19, 2003 at Bank One, N.A., where defendant PRESTON maintained an account in the alias name of "Richard Preston."

*The Meghan Ross Transactions*

25.　It was further part of the scheme that in or about late spring and early summer of 2004, defendants FREDDIE JOHNSON, OWEN PITTMAN and LEANDRE BURNETT knowingly submitted and caused to be submitted false and fraudulent loan applications in the name of "Meghan Ross" to MorEquity, Inc., First Franklin Financial Corporation, and Chapel Mortgage Corporation in order to fraudulently obtain mortgage loans for fraudulent real estate transactions associated with the residential properties located at 4830 West Arthington Street, 4834 West Arthington Street, and 1653 South Kedvale Avenue in Chicago, Illinois (the "Meghan Ross Transactions").

26.　It was further part of the scheme that in return for the promise of payments provided by defendant FREDDIE JOHNSON, defendant BRANDY AMOS fraudulently posed as "Meghan Ross," the purported buyer, at the closings for the Meghan Ross

Transactions. The closings for 4830 West Arthington Street, 4834 West Arthington Street, and 1653 South Kedvale Avenue occurred on or about June 10, 2003, June 13, 2003, and July 7, 2003, respectively.

27.    It was further part of the scheme that defendant MARILYN RAINEY fraudulently posed as "Ruth Williams," the purported seller, at the 4830 West Arthington Street closing.

28.    It was further part of the scheme that defendants FREDDIE JOHNSON and OWEN PITTMAN knowingly caused the Meghan Ross loan applications to include false and fraudulent employment and income information and to falsely represent that "Meghan Ross" intended to occupy each property she was purchasing as her primary residence.

29.    It was further part of the scheme that defendants FREDDIE JOHNSON and OWEN PITTMAN knowingly caused the Meghan Ross loan applications to fraudulently omit that "Meghan Ross" was then seeking to purchase or had recently purchased additional property.

30.    It was further part of the scheme that defendant LEANDRE BURNETT knowingly assisted defendant OWEN PITTMAN in obtaining documents necessary for the fraudulent Meghan Ross Transactions.

31.    It was further part of the scheme that defendant FREDDIE JOHNSON provided defendant BRANDY AMOS with a fraudulent Illinois state driver's license in the name of "Meghan Ross" to present at the closings for the Meghan Ross Transactions.

32.    It was further part of the scheme that in return for the promise of payments provided by defendant FREDDIE JOHNSON, defendant LEANDRE BURNETT knowingly and fraudulently agreed to participate in the fraudulent real estate transactions associated with the 4830 West Arthington Street and 4834 West Arthington Street properties by acting as a consultant in order to assure that the transactions closed.

33.    It was further part of the scheme that in return for the promise of payments provided by defendant FREDDIE JOHNSON, defendant LORIE WESTERFIELD knowingly agreed to act as a real estate attorney at the closings for the fraudulent Meghan Ross Transactions. Although she was aware of false and fraudulent representations contained in the loan applications associated with the Meghan Ross Transactions, defendant WESTERFIELD attended the closings and instructed defendant BRANDY AMOS on how to execute certain documents to assure that the fraudulent real estate transactions closed. Defendant WESTERFIELD received payment for her alleged legal services from the properties' sale proceeds.

34.    It was further part of the scheme that defendant FREDDIE JOHNSON caused the proceeds from the sale of 4830 West Arthington Street to be made payable to R.M. Developers, LLC. On or about June 11, 2003, defendant JOHNSON endorsed and deposited these sale proceeds in the approximate amount of $75,819 into R.M. Developers, LLC's checking account at the Community Bank of Lawndale.

35.    It was further part of the scheme that defendant FREDDIE JOHNSON caused

11

checks representing proceeds from the sale of 4834 West Arthington Street and 1653 West Kedvale to be made payable to "Richard Preston," an alias which defendant JOHNSON knew would be used by defendant ERNEST PRESTON to negotiate the checks.

36.    It was further part of the scheme that defendant ERNEST PRESTON fraudulently negotiated a check made payable to "Richard Preston" from the sale of 4834 West Arthington Street in the approximate amount of $104,399 on or about June 14, 2003 at Bank One, N.A., where defendant PRESTON maintained an account in the alias name of "Richard Preston."

37.    It was further part of the scheme that defendant ERNEST PRESTON fraudulently negotiated a check made payable to "Richard Preston" from the sale of 1653 West Kedvale in the approximate amount of $177,511 on or about July 7, 2003 at Bank One, N.A., where defendant PRESTON maintained an account in the alias name of "Richard Preston."

*The Eddie Robinson Transactions*

38.    It was further part of the scheme that in or about the fall of 2003, defendants FREDDIE JOHNSON and WILLIE COLLINS knowingly submitted and caused to be submitted false and fraudulent loan applications in the name of "Eddie Robinson" to First Franklin Financial Corporation, The CIT Group / Consumer Finance, Inc., and Long Beach Mortgage in order to fraudulently obtain mortgage loans for fraudulent real estate transactions associated with the residential properties located at 2315 West Warren

Boulevard, 2738 West Warren Boulevard, 2742 West Warren Boulevard and 4316 West

Jackson Boulevard in Chicago, Illinois (the "Eddie Robinson Transactions").

39.    It was further part of the scheme that defendant WILLIE COLLINS

fraudulently posed as "Eddie Robinson," the purported buyer, at the closings for the Eddie

Robinson Transactions.  The closings for 2315 West Warren Boulevard, 2738 West Warren

Boulevard, 2742 West Warren Boulevard and 4316 West Jackson Boulevard occurred on or

about September 5, 2003, September 23, 2003, October 14, 2003 and November 3, 2003,

respectively.

40.    It was further part of the scheme that defendant FREDDIE JOHNSON

fraudulently posed as "Shelton Williams," the sellers' purported representative operating

with power-of-attorney authority, at the 2738 West Warren Boulevard closing.

41.    It was further part of the scheme that defendant FREDDIE JOHNSON

knowingly caused the Eddie Robinson loan applications to include false and fraudulent

employment and income information and to falsely represent that "Eddie Robinson" intended

to occupy each property he was purchasing as his primary residence.

42.    It was further part of the scheme that defendant FREDDIE JOHNSON

knowingly caused the Eddie Robinson loan applications to fraudulently omit that "Eddie

Robinson" was then seeking to purchase or had recently purchased additional property.

43.    It was further part of the scheme that in return for the promise of payments

provided by defendant FREDDIE JOHNSON, defendant LORIE WESTERFIELD knowingly

agreed to act as a real estate attorney at the closings for the sale of 2315 West Warren Boulevard and 2738 West Warren Boulevard. Defendant WESTERFIELD received payment for her alleged legal services from these properties' sale proceeds.

44.    It was further part of the scheme that defendant FREDDIE JOHNSON caused checks representing proceeds from the sale of 2315 West Warren Boulevard and 2738 West Warren Boulevard to be made payable to "Richard Preston," an alias which defendant JOHNSON knew would be used by defendant ERNEST PRESTON to negotiate the checks.

45.    It was further part of the scheme that defendant ERNEST PRESTON fraudulently negotiated checks made payable to "Richard Preston" from the sale of 2315 West Warren Boulevard in the approximate amounts of $173,320 and $25,000 on or about September 5, 2003 at the Austin and Roosevelt Currency Exchange using the alias name of "Richard Preston."

46.    It was further part of the scheme that defendant ERNEST PRESTON fraudulently negotiated checks made payable to "Richard Preston" from the sale of 2738 West Warren Boulevard in the approximate amounts of $186,837 and $38,500 on or about September 23, 2003 at the Austin and Roosevelt Currency Exchange using the alias name of "Richard Preston."

*The Martha Kelly Transaction*

47.    It was further part of the scheme that in or about the fall of 2003, defendant FREDDIE JOHNSON knowingly caused a loan application to be submitted in the name of

14

"Martha Kelly" to David Piccinini, Inc. in order to fraudulently obtain a mortgage loan for a fraudulent real estate transaction associated with the residential property located at 3143 West Monroe Street in Chicago, Illinois (the "Martha Kelly Transaction").

48.    It was further part of the scheme that defendant MARILYN RAINEY fraudulently posed as "Martha Kelly," the purported buyer, at the closing associated with the Martha Kelly Transaction, which occurred on or about October 8, 2003.

49.    It was further part of the scheme that defendant FREDDIE JOHNSON caused a check representing the proceeds from the Martha Kelly Transaction to be made payable to "Richard Preston," an alias which defendant JOHNSON knew would be used by defendant ERNEST PRESTON to negotiate the check.

50.    It was further part of the scheme that defendant ERNEST PRESTON fraudulently negotiated the check made payable to "Richard Preston" from the Martha Kelly Transaction in the approximate amount of $209,826 on or about October 9, 2003 at the Austin and Roosevelt Currency Exchange using the alias name of "Richard Preston."

*The Mamie Crockett Transaction*

51.    It was further part of the scheme that in or about March of 2004, defendants FREDDIE JOHNSON and ROBIN YANCY knowingly submitted and caused to be submitted a false and fraudulent loan application in the name of "Sheldon Floyd" to People's Choice Home Loan, Inc. in order to fraudulently obtain a mortgage loan for a fraudulent real estate transaction associated with the residential property located at 2826 West Adams Street

15

in Chicago, Illinois (the "Mamie Crockett Transaction").

52.     It was further part of the scheme that defendant MARILYN RAINEY fraudulently posed as "Mamie Crockett," the purported seller at the closing associated with the Mamie Crockett Transaction, which occurred on or about April 29, 2004.

53.     It was further part of the scheme that defendant FREDDIE JOHNSON knowingly caused the Sheldon Floyd loan application to include false and fraudulent employment and income information.

54.     It was further part of the scheme that defendants FREDDIE JOHNSON, ROBIN YANCY and MARILYN RAINEY caused a $25,000 check representing proceeds from the Mamie Crockett Transaction to be made payable to "Tyme, LLC."

55.     It was further part of the scheme that defendant ROBIN YANCY deposited the $25,000 check from the Mamie Crockett Transaction in Tyme, LLC's checking account at Shore Bank on or about April 29, 2004.

56.     It was further part of the scheme that defendant FREDDIE JOHNSON caused a check representing proceeds from the Mamie Crockett Transaction in the approximate amount of $223,707 to be endorsed to Individual CD, who deposited the check in a First Northern Credit Union checking account.  Defendant JOHNSON subsequently directed Individual CD to withdraw the check's value from her account by purchasing cashier's checks, including a $179,700 cashier's check payable to Individual YB, a $21,792 cashier's check payable to defendant KHADIJA MUMIN, and two $4,500

cashier's checks payable to Tyme, L.L.C.

*The Keisha Harris Transactions*

57.    It was further part of the scheme that in or about the summer of 2004,

defendants FREDDIE JOHNSON and QIANA BISHOP-OYEDEPO knowingly submitted

and caused to be submitted false and fraudulent loan applications in the name of "Keisha

Harris" to Long Beach Mortgage Company, BNC Mortgage, Inc., and First Magnus Financial

Corp. in order to fraudulently obtain mortgage loans for the fraudulent real estate transactions

associated with the residential properties located at 3325 West Adams Street, 2247 South

Springfield Street, and 3352 West Adams Street in Chicago, Illinois (the "Keisha Harris

Transactions").

58.    It was further part of the scheme that an individual fraudulently posed as

"Keisha Harris," the purported buyer, at the closings for the Keisha Harris Transactions.  The

closings for 3325 West Adams Street, 2247 South Springfield Street, and 3352 West Adams

Street occurred on or about July 30, 2004, July 30, 2004, and August 12, 2004, respectively.

59.    It was further part of the scheme that defendant WILLIE COLLINS

fraudulently posed as "James Smith," the purported seller, at the 3325 West Adams Street

closing.

60.    It was further part of the scheme that defendant MARILYN RAINEY

fraudulently posed as "Annie Pearl Dawson," the purported seller and representative of the

seller operating with power-of-attorney authority, at the 2247 South Springfield Street

closing.

61.    It was further part of the scheme that defendants FREDDIE JOHNSON and

QIANA BISHOP-OYEDEPO knowingly caused the Keisha Harris loan applications to

include false and fraudulent employment and income information and to falsely represent that

"Keisha Harris" intended to occupy each property she was purchasing as her primary

residence.

62.    It was further part of the scheme that defendant QIANA BISHOP-OYEDEPO

knowingly caused the Keisha Harris loan applications to fraudulently omit that "Keisha

Harris" was then seeking to purchase or had recently purchased additional property.

63.    It was further part of the scheme that defendant FREDDIE JOHNSON caused

a check representing the proceeds from the sale of 3325 West Adams Street to be made

payable to "James and Dorothy Smith." Defendant JOHNSON knew defendant WILLIE

COLLINS would be able to use the alias "James Smith" to negotiate this check.

64.    It was further part of the scheme that defendant WILLIE COLLINS

fraudulently negotiated the check from the sale of 3325 West Adams Street in the

approximate amount of $241,150 on or about July 31, 2004 at the West Grand Avenue

Currency Exchange using the alias "James Smith."

65.    It was further part of the scheme that defendant FREDDIE JOHNSON caused

a check representing the proceeds from the sale of 2247 South Springfield Street to be made

payable to "Mary Darling & Annie Pearl Dawson." Defendant JOHNSON knew defendant

18

MARILYN RAINEY would be able to use the alias "Annie Pearl Dawson" to negotiate this check.

66.    It was further part of the scheme that defendant MARILYN RAINEY fraudulently negotiated the check from the sale of 2247 South Springfield Street in the approximate amount of $186,410 on or about August 2, 2004 at the West Grand Avenue Currency Exchange using the alias "Annie Pearl Dawson."

*The Sinequa Wilcox Transactions*

67.    It was further part of the scheme that in or about the fall of 2005, defendants FREDDIE JOHNSON and JENNIFER RICHARDSON knowingly submitted and caused to be submitted false and fraudulent loan applications in the name of "Sinequa Wilcox" to Bayview Financial, Accredited Home Lenders, and Metrocities Mortgage LLC in order to fraudulently obtain mortgage loans for fraudulent real estate transactions associated with the residential properties located at 4152 West Adams Street, 3648 West Polk Street, and 1841 South Drake Avenue in Chicago, Illinois (the "Sinequa Wilcox Transactions").

68.    It was further part of the scheme that in return for the promise of payments provided by defendant FREDDIE JOHNSON, defendant BRANDY AMOS fraudulently posed as "Sinequa Wilcox," the purported buyer, at closings associated with the Sinequa Wilcox Transactions. The closings for 4152 West Adams Street, 3648 West Polk Street, and 1841 South Drake Avenue occurred on or about September 13, 2005, October 25, 2005, and November 14, 2005.

69.    It was further part of the scheme that defendant MARILYN RAINEY fraudulently posed as "Lela Williams," a purported seller and representative of the sellers operating with power-of-attorney authority, during closings associated with the Sinequa Wilcox Transactions.

70.    It was further part of the scheme that defendants FREDDIE JOHNSON and JENNIFER RICHARDSON knowingly caused the Sinequa Wilcox loan applications to include false and fraudulent employment and income information.

71.    It was further part of the scheme that defendants FREDDIE JOHNSON and JENNIFER RICHARDSON knowingly caused the Sinequa Wilcox loan applications to fraudulently omit that "Sinequa Wilcox" was then seeking to purchase or had recently purchased additional property.

72.    It was further part of the scheme that defendant FREDDIE JOHNSON provided defendant BRANDY AMOS a fraudulent Indiana state driver's license in the name of "Sinequa Wilcox" to present at closings associated with the Sinequa Wilcox Transactions.

73.    It was further part of the scheme that defendant JENNIFER RICHARDSON attended the Sinequa Wilcox Transactions' closings and instructed defendant BRANDY AMOS on how to execute certain documents to assure that the fraudulent real estate transactions closed.

74.    It was further part of the scheme that defendant FREDDIE JOHNSON caused a check representing the proceeds from the sale of 4152 West Adams Street to be made

payable to "Lela Moon Williams and Albert L. Williams," aliases which defendant JOHNSON knew would be used by defendants MARILYN RAINEY and WILLIE COLLINS to negotiate the check.

75.     It was further part of the scheme that  defendants MARILYN RAINEY and WILLIE COLLINS fraudulently negotiated the check from the sale of 4152 West Adams Street in the approximate amount of $212,188 from on or about September 13, 2005 to September 21, 2005 at the Taylor-Ogden Currency Exchange using the alias names of "Lela Moon Williams" and "Albert L. Williams" by withdrawing its value in cash and money orders made payable to "Albert and Lela Williams."

76.     It was further part of the scheme that defendant JENNIFER RICHARDSON caused a wire transfer representing the proceeds from the sale of 3648 West Polk Street in the approximate amount of $208,759 to be sent to a Planites Credit Union bank account maintained by her step-mother on or about October 25, 2005.  Defendant RICHARDSON then caused the a portion of these proceeds to be withdrawn from her step-mother's bank account in the form of a cashier's check in the approximate amount of $198,000 made payable to Individual BL on or about October 28, 2005.  Defendant RICHARDSON then directed Individual BL to convert a portion of these proceeds into four, new cashier's checks each in the approximate amount of $46,985, two of which were made payable to defendant RICHARDSON and two of which were made payable to Individual BL.

77.     It was further part of the scheme that defendant JENNIFER RICHARDSON

21

attempted to cause a wire transfer representing the proceeds from the sale of 1841 South

Drake Avenue in the approximate amount of $255,957 to be sent to Mid-States Corporate

FCU for further transfer to a New Century Federal Credit Union bank account maintained

by Individual BL on or about November 14, 2005.  When this attempted wire transfer was

rejected, defendant RICHARDSON caused a wire transfer  representing these proceeds in

the approximate amount of $255,957 to be sent to a LaSalle Bank, N.A. bank account

maintained by defendant RICHARDSON on or about November 17, 2005.

78.     It was further part of the scheme that defendants did misrepresent, conceal and

hide and caused to be misrepresented, concealed and hidden acts done in furtherance of the

scheme and the purpose of those acts.

79.     On or about June 13, 2003, at North Riverside, in the Northern District of

Illinois, Eastern Division,

FREDDIE JOHNSON,
BRANDY AMOS,
OWEN PITTMAN,
LORIE WESTERFIELD,
LEANDRE BURNETT, and
ERNEST PRESTON,

defendants herein, and others, known and unknown to the grand jury, for the purpose of

executing the aforesaid scheme, and attempting to do so, did knowingly cause to be

transmitted by means of a wire communication in interstate commerce, certain signs, signals

and sounds, namely: an interstate wire transfer of funds from Minnesota to Illinois, which

funds transfer represented the proceeds of a mortgage loan in the amount of approximately

$114,322 issued for the purported purchase of property located at 4834 West Arthington Street, Chicago, Illinois.

In violation of Title 18, United States Code, Sections 1343 and 2.

<u>COUNT TWO</u>

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 78 of Count One are realleged as if fully restated herein.

2.    On or about July 7, 2003, at North Riverside, in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON,
BRANDY AMOS,
OWEN PITTMAN,
LORIE WESTERFIELD, and
ERNEST PRESTON,

defendants herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be transmitted by means of a wire communication in interstate commerce, certain signs, signals and sounds, namely: an interstate wire transfer of funds from New York to Illinois, which funds transfer represented the proceeds of a mortgage loan in the amount of approximately $158,474 issued for the purported purchase of property located at 1653 South Kedvale Avenue, Chicago, Illinois.

In violation of Title 18, United States Code, Section 1343 and 2.

24

## COUNT THREE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 78 of Count One are realleged as if fully restated herein.

2.    On or about September 5, 2003, at Wilmette, in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON,<br>
WILLIE COLLINS,<br>
LORIE WESTERFIELD, and<br>
ERNEST PRESTON,

defendants herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be transmitted by means of a wire communication in interstate commerce, certain signs, signals and sounds, namely: an interstate wire transfer of funds from Minnesota to Ohio, which funds transfer represented the proceeds of a mortgage loan in the amount of approximately $243,610 issued for the purported purchase of property located at 2315 West Warren Boulevard, Chicago, Illinois.

In violation of Title 18, United States Code, Section 1343 and 2.

COUNT FOUR

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 78 of Count One are realleged as if fully restated herein.

2.      On or about September 23, 2003, at Wilmette , in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON,
WILLIE COLLINS,
LORIE WESTERFIELD, and
ERNEST PRESTON,

defendants herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be transmitted by means of a wire communication in interstate commerce, certain signs, signals and sounds, namely: an interstate wire transfer of funds from New York to Ohio, which funds transfer represented the proceeds of a mortgage loan in the amount of approximately $255,874 issued for the purported purchase of property located at 2738 West Warren Boulevard, Chicago, Illinois.

In violation of Title 18, United States Code, Section 1343 and 2.

26

COUNT FIVE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.     Paragraphs 1 through 78 of Count One are realleged as if fully restated herein.

2.     On or about October 14, 2003, at Homewood, in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON, and
WILLIE COLLINS,

defendants herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be transmitted by means of a wire communication in interstate commerce, certain signs, signals and sounds, namely: an interstate wire transfer of funds from California to Illinois, which funds transfer represented the proceeds of a mortgage loan in the amount of approximately $213,154 issued for the purported purchase of property located at 2742 West Warren Boulevard, Chicago, Illinois.

In violation of Title 18, United States Code, Section 1343 and 2.

27

## COUNT SIX

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 78 of Count One are realleged as if fully restated herein.

2.    On or about November 3, 2003, at Homewood, in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON, and
WILLIE COLLINS,

defendants herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be transmitted by means of a wire communication in interstate commerce, certain signs, signals and sounds, namely: an interstate wire transfer of funds from New York to Illinois, which funds transfer represented the proceeds of a mortgage loan in the amount of approximately $173,755, issued for the purported purchase of property located at 4316 West Jackson Boulevard, Chicago, Illinois.

In violation of Title 18, United States Code, Section 1343 and 2.

28

COUNT SEVEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 78 of Count One are realleged as if fully restated herein.

2.      On or about April 29, 2004, at Schaumburg, in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON,
MARILYN RAINEY, and
ROBIN YANCY,

defendants herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be transmitted by means of a wire communication in interstate commerce, certain signs, signals and sounds, namely: an interstate wire transfer of funds from Illinois to Ohio, which funds transfer represented the proceeds of a mortgage loan in the amount of approximately $222,165 issued for the purported purchase of property located at 2826 West Adams Street, Chicago, Illinois.

In violation of Title 18, United States Code, Section 1343 and 2.

<u>COUNT EIGHT</u>

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 78 of Count One are realleged as if fully restated herein.

2.    On or about July 30, 2004, at Chicago, in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON,
WILLIE COLLINS, and
QIANA BISHOP-OYEDEPO,

defendants herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be transmitted by means of a wire communication in interstate commerce, certain signs, signals and sounds, namely: an interstate wire transfer of funds from California to Illinois, which funds transfer represented the proceeds of a mortgage loan in the amount of approximately $208,137 issued for the purported purchase of property located at 3325 West Adams Street, Chicago, Illinois.

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNT NINE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 78 of Count One are realleged as if fully restated herein.

2.    On or about July 30, 2004, at Chicago, in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON,<br>
MARILYN RAINEY, and<br>
QIANA BISHOP-OYEDEPO,

defendants herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be transmitted by means of a wire communication in interstate commerce, certain signs, signals and sounds, namely: an interstate wire transfer of funds from New York to Illinois, which funds transfer represented the proceeds of a mortgage loan in the amount of approximately $198,964 issued for the purported purchase of property located at 2247 South Springfield Street, Chicago, Illinois.

In violation of Title 18, United States Code, Section 1343 and 2.

COUNT TEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 78 of Count One are realleged as if fully restated herein.

2.      On or about September 13, 2005, at Lincolnwood, in the Northern District of

Illinois, Eastern Division,

FREDDIE JOHNSON,
BRANDY AMOS,
MARILYN RAINEY, and
JENNIFER RICHARDSON

defendants herein, and others, known and unknown to the grand jury, for the purpose of

executing the aforesaid scheme, and attempting to do so, did knowingly cause to be

transmitted by means of a wire communication in interstate commerce, certain signs, signals

and sounds, namely: an interstate wire transfer of funds from California to Illinois, which

funds transfer represented the proceeds of a mortgage loan in the amount of approximately

$173,813 issued for the purported purchase of property located at 4152 West Adams Street,

Chicago, Illinois.

In violation of Title 18, United States Code, Section 1343 and 2.

<u>COUNT ELEVEN</u>

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 78 of Count One are realleged as if fully restated herein.

2.    On or about October 25, 2005, at Lincolnwood, in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON,
BRANDY AMOS,
MARILYN RAINEY, and
JENNIFER RICHARDSON,

defendants herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be transmitted by means of a wire communication in interstate commerce, certain signs, signals and sounds, namely: an interstate wire transfer of funds from California to Illinois, which funds transfer represented the proceeds of a mortgage loan in the amount of approximately $185,076 issued for the purported purchase of property located at 3648 West Polk Street, Chicago, Illinois.

In violation of Title 18, United States Code, Section 1343 and 2.

33

<u>COUNT TWELVE</u>

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 78 of Count One are realleged as if fully restated herein.

2.      On or about November 11, 2005, at Lincolnwood, in the Northern District of

Illinois, Eastern Division,

FREDDIE JOHNSON,
BRANDY AMOS,
MARILYN RAINEY, and
JENNIFER RICHARDSON,

defendants herein, and others, known and unknown to the grand jury, for the purpose of

executing the aforesaid scheme, and attempting to do so, did knowingly cause to be

transmitted by means of a wire communication in interstate commerce, certain signs, signals

and sounds, namely: an interstate wire transfer of funds from California to Illinois, which

funds transfer represented the proceeds of a mortgage loan in the amount of approximately

$214,122 issued for the purported purchase of property located at 1841 South Drake Avenue,

Chicago, Illinois.

In violation of Title 18, United States Code, Section 1343 and 2.

34

<u>COUNT THIRTEEN</u>

The SPECIAL MARCH 2007 GRAND JURY further charges:

On or about June 13, 2003, at North Riverside, in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON

defendant herein, did knowingly transfer, possess or use or cause the transfer, possession or use, without lawful authority, a means of identification of another person, namely, the name, date of birth and social security number of Meghan Ross on a fraudulent Illinois state driver's license, during and in relation to the wire fraud offense described in Count Two of this indictment;

In violation of Title 18, United States Code Sections 1028A(a)(1) and 2.

35

COUNT FOURTEEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

On or about October 14, 2003, at Homewood, in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON and
WILLIE COLLINS,

defendants herein, did knowingly transfer, possess or use or cause the transfer, possession or use, without lawful authority, a means of identification of another person, namely, the name and social security number of Eddie Robinson, during and in relation to the wire fraud offense described in Count Four of this indictment;

In violation of Title 18, United States Code Sections 1028A(a)(1) and 2.

36

<u>COUNT FIFTEEN</u>

The SPECIAL MARCH 2007 GRAND JURY further charges:

On or about September 23, 2003, at Chicago, in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON and
ERNEST PRESTON,

defendants herein, did knowingly transfer, possess or use or cause the transfer, possession or use, without lawful authority, a means of identification of another person, namely, the name and date of birth of Richard Preston on a fraudulent Illinois state identification card, during and in relation to the wire fraud offense described in Count Four of this indictment;

In violation of Title 18, United States Code Sections 1028A(a)(1) and 2.

## COUNT SIXTEEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

On or about April 29, 2004 at Schaumburg, in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON and
MARILYN RAINEY,

defendants herein, did knowingly transfer, possess or use or cause the transfer, possession or use, without lawful authority, a means of identification of another person, namely, the name of Mamie Crockett, during and in relation to the wire fraud offense described in Count Seven of this indictment;

In violation of Title 18, United States Code Sections 1028A(a)(1) and 2.

<u>COUNT SEVENTEEN</u>

The SPECIAL MARCH 2007 GRAND JURY further charges:

On or about September 13, 2005, at Lincolnwood, in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON

defendant herein, did knowingly transfer, possess or use or cause the transfer, possession or use, without lawful authority, a means of identification of another person, namely, the name and date of birth of Sinequa Wilcox on a fraudulent Indiana state driver's license, during and in relation to the wire fraud offense described in Count Ten of this indictment;

In violation of Title 18, United States Code Sections 1028A(a)(1) and 2.

<u>COUNT EIGHTEEN</u>

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      The West Grand Avenue Currency Exchange was a currency exchange, the activities of which affected interstate commerce.

2.      On or about September 3, 2004, at Chicago, in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON and
KHADIJA MUMIN,

defendants herein, did knowingly make, utter and possess a counterfeited security of an organization, namely, a counterfeit Midwest National Bank check purported to be drawn on the account of "Advantage Title LLC," made payable to "James Smith," bearing check number 4588 in the approximate amount of $279,400, with intent to deceive another person and an organization, namely, the 2934 West Grand Avenue Currency Exchange, Inc.;

In violation of Title 18, United States Code, Sections 513(a) and 2.

40

<u>COUNT NINETEEN</u>

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.     The West Grand Avenue Currency Exchange was a currency exchange, the activities of which affected interstate commerce.

2.     On or about September 4, 2004, at Chicago, in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON and
KHADIJA MUMIN,

defendants herein, did knowingly make, utter and possess a counterfeited security of an organization, namely, a counterfeit Midwest National Bank check purported to be drawn on the account of "Advantage Title LLC," made payable to "James Smith," bearing check number 4587 in the approximate amount of $238,575, with intent to deceive another person and an organization, namely, the 2934 West Grand Avenue Currency Exchange, Inc.;

In violation of Title 18, United States Code, Sections 513(a) and 2.

41

## COUNT TWENTY

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    The West Grand Avenue Currency Exchange was a currency exchange, the activities of which affected interstate commerce.

2.    On or about September 7, 2004, at Chicago, in the Northern District of Illinois, Eastern Division,

FREDDIE JOHNSON and
KHADIJA MUMIN,

defendants herein did knowingly make, utter and possess a counterfeited security of an organization, namely, a counterfeit Midwest National Bank check purported to be drawn on the account of "Advantage Title LLC," made payable to "James Smith," bearing check number 4598 in the approximate amount of $169,400, with intent to deceive another person and an organization, namely, the 2934 West Grand Avenue Currency Exchange, Inc.;

In violation of Title 18, United States Code, Sections 513(a) and 2.

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY

42